O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROSALIA HERNANDEZ,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,

Defendant.

Case No. CV 12-3320-SP

MEMORANDUM OPINION AND ORDER

I.

**INTRODUCTION**

On April 17, 2012, plaintiff Rosalia Hernandez filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four issues for decision: (1) whether the Administrative Law Judge ("ALJ") erred at step two; (2) whether the ALJ properly discounted plaintiff's credibility; (3) whether the ALJ properly assessed plaintiff's residual functional capacity ("RFC"); and (4) whether the ALJ posed a proper hypothetical to the vocational expert. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-15; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-20.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ: erred at Step Two; failed to properly discount plaintiff's credibility; failed to properly assess plaintiff's RFC; and posed a proper hypothetical but it was based on an improper RFC determination. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-four years old on the date of her January 6, 2011 administrative hearing, has a sixth grade education. AR at 28, 35. Plaintiff has past relevant work as a janitor, cooking helper, laborer, dishwasher, and babysitter. *Id.* at 50.

On June 3, 2009, plaintiff filed an application for a period of disability and DIB and an application for SSI, alleging an onset date of May 15, 2008, due to a dislocated right arm, ulcers, high blood pressure, and a thyroid condition. *Id.* at 11, 127, 134, 157. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 69-73, 75-80.

On January 6, 2011, plaintiff, represented by counsel, appeared and testified

at a hearing before the ALJ. *Id.* at 28-54. The ALJ also heard testimony from Sandra Trost, a vocational expert ("VE"). *Id.* at 50-53. On February 9, 2011, the ALJ denied plaintiff's claims for benefits. *Id.* at 11-22.

The ALJ found that plaintiff met the insured status requirements through December 31, 2012. *Id.* at 14. Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since May 15, 2008, the alleged onset date. *Id*.

At step two, the ALJ found that plaintiff suffers from the following severe impairments: history of breast cancer; status post left radical mastectomy; arthritis; obesity; peptic ulcer disease; and gastroesophageal reflux disease. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, do not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 19.

The ALJ then assessed plaintiff's RFC[1] and determined that she has the RFC to perform light work with the following limitations: lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk/sit for six hours in an eight-hour work day; and occasional overhead reaching with the left arm. *Id.* at 20. The ALJ also found that plaintiff had decreased grip strength in the left hand, but could push and pull without significant limitation. *Id.*

The ALJ found, at step four, that plaintiff was capable of performing her past relevant work as a babysitter. *Id*. at 21.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 22.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

**III.**

**STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing

the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**IV.**

**DISCUSSION**

**A. The ALJ Erred at Step Two**

Plaintiff argues that the ALJ erred at step two by failing to find that plaintiff's right shoulder and mental conditions were severe impairments. P. Mem. at 3-8. Specifically, plaintiff contends that the objective medical evidence supported a finding that both conditions were severe. *Id.* The court agrees that the ALJ erred, but the error is harmless, in part.

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920 (a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

The ALJ determined that plaintiff suffered from the following severe impairments: history of breast cancer; status post left radical mastectomy; arthritis; obesity; peptic ulcer disease; and gastroesophageal reflux disease. AR at 14. As for plaintiff's mental impairment, the ALJ concluded that it was not severe because it would cause mild or no limitations in the four functional areas set out in the Listings, known as the "paragraph B" criteria. *Id.* at 18-19.

**1. Right Shoulder Condition**

Defendant does not dispute that plaintiff had a severe right shoulder condition. Instead, defendant contends that the ALJ's finding that plaintiff had the severe impairment of arthritis encompassed the right shoulder condition because a July 2008 MRI of plaintiff's right shoulder showed mild acromioclavicular osteoarthritis. D. Mem. at 2-3. The court disagrees.

The medical evidence is as follows.

**a. Dr. Edwin Haronian**[2]

Dr. Edwin Haronian, a treating orthopedic surgeon, treated plaintiff from May 2008 through the date of decision. AR at 381. After the initial visit, Dr. Haronian opined that plaintiff could lift twenty pounds and had to avoid repetitive bending, twisting, power gripping, overhead activities, and over shoulder activities. *Id*. In 2009, Dr. Haronian began to regularly treat plaintiff. *See, e.g.*, *id.* at 371-80. Dr. Haronian observed that plaintiff had spasm and tenderness in the paravertebral muscles of the cervical spine and right shoulder impingement, as well as a decreased range of motion in both. *Id.* at 371. Dr. Haronian noted that plaintiff had been treated conservatively by a chiropractor and the MRI of the cervical spine revealed relatively normal findings. *Id.* at 371, 374, 376. In subsequent examinations, Dr. Haronian observed that plaintiff had right shoulder impingement, decreased range of motion, tenderness, pain, hypertonicity of the right trapezius muscle, and positive Hawkins and Yergason's tests. *Id.* at 365-68. Dr. Haronian diagnosed plaintiff with, among other things, shoulder impingement and cervical radiculopathy and recommended surgery. *See, e.g., id.* at 365-66, 371-73. Dr. Haronian initially treated plaintiff conservatively but later recommended surgery. *See id.*

**b. Dr. Eugene Harris**

Dr. Eugene Harris, an examining orthopedic surgeon, examined plaintiff on July 19, 2010. *Id.* at 558-68. Dr. Harris observed, among other things, that

---

[2] Plaintiff incorrectly asserts that the ALJ failed to indicate what weight he gave to Dr. Haronian, but plaintiff's mistake is understandable. *See* P. Mem. at 6. The ALJ stated he gave great weight to the opinions of the treating physicians, which includes Dr. Haronian. AR at 21. But, as discussed, *infra*, despite stating that he credited Dr. Haronian's opinion, the ALJ failed to adopt his findings. The ALJ must provide specific and legitimate reasons for rejecting Dr. Haronian's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).

plaintiff had: a reduced range of motion, tenderness, and positive impingement in the right shoulder; numbness involving the right upper extremity; and hypethesia involving the right upper extremity.[3] *Id.* at 562-63. Based on the examination, Dr. Harris diagnosed plaintiff with impingement syndrome, cervical brachialgia, median nerve compression, and brachial plexitis on the right side. *Id.* at 566. Dr. Harris recommended an impingement test of the right shoulder to determine whether she would be a candidate for surgery. *Id*. In the event that plaintiff was not a candidate for surgery, Dr. Harris precluded her from overhead use of the right upper extremity, heavy lifting, pulling, and pushing. *Id.*

**c. <u>Dr. Concepcion A. Enriquez</u>**

Dr. Concepcion A. Enriquez, a consultative internist, examined plaintiff on August 11, 2009. *Id.* at 252-56. Dr. Enriquez observed that plaintiff had tenderness and decreased range of motion in the right shoulder. *Id.* at 254. Dr. Enriquez opined that plaintiff had the RFC to lift/carry twenty-five pounds frequently and fifty pounds occasionally and had no limitations with regard to above-the-shoulder lifting, pulling, and pushing. *Id.* at 255.

**d. <u>Dr. Eric Gofnung</u>**

Dr. Eric Gofnung, a treating chiropractor from approximately May 2008 through April 2009, observed that plaintiff's right shoulder had tenderness to palpation, a positive right shoulder impingement sign, and a decreased range of motion. *Id*. at 439, 442. Based on his own examinations and her medical records, Dr. Gofnung's diagnostic impressions were that plaintiff had: cervical spine myofascitis and disc protrusion; right shoulder sprain/strain and tendonitis; insomnia; anxiety/depression; and right carpal tunnel syndrome. *Id.* at 446. Dr. Gofnung restricted plaintiff from: heavy lifting; use of the right arm at or above

---

[3] The ALJ mistakenly stated that Dr. Harris observed hypesthesia involving the right lower extremity, rather than the right upper extremity. *Id.* at 17, 563.

the shoulder; repetitive torquing, pulling, pushing with right arm; and repetitive use of right hand for grasping, pulling, or pushing. *Id.* at 448.

**e. <u>Medical Tests</u>**

Plaintiff had numerous tests conducted. EMGs conducted on July 12, 2008 showed no atrophy in the upper extremities, as well as no acute or chronic denervation potentials. *Id.* at 311-16. A July 25, 2008 right shoulder MRI showed mild acromioclavicular osteoarthritis and thickening of the supraspinatus and infraspinatus tendons consistent with tendonitis. *Id.* at 302-03. Cervical spine MRIs performed on July 25, 2008 showed disc bulges at C3 through C7. *Id.* at 304-10.

The medical evidence of a severe impairment to plaintiff's right shoulder clearly meets the de minimis threshold required at step two. The question then is whether the ALJ intended for the arthritis finding to encompass the right shoulder condition. The answer is unclear.

The medical evidence does not appear to support defendant's claim that the ALJ's finding that plaintiff had the severe impairment of arthritis was sufficient. Although one MRI showed mild acromioclavicular osteoarthritis (*id.* at 302-03), the treating and examining physicians did not identify arthritis as the source of plaintiff's right shoulder problems. Instead, Dr. Haronian and Dr. Harris opined another cause for the pain, shoulder impingement syndrome. *Id.* at 365-66, 562-63. The ALJ failed to explain why he made the arthritis finding and effectively rejected Dr. Haronian's and Dr. Harris's opinions. Accordingly, the court concludes that the arthritis finding does not sufficiently encompass plaintiff's right shoulder condition. The ALJ erred by failing to find that plaintiff's right shoulder condition was severe.

**2. Mental Impairment**

Here, the issue is not whether plaintiff had a mental condition, but rather whether it was severe. The ALJ reasoned that plaintiff's mental condition was not severe because she had only mild limitations in the "paragraph B"criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* at 18-19.

The record indicates that plaintiff did not seek treatment for her alleged mental condition. Instead, she was examined on three occasions. Dr. Cynthia Mothersole examined plaintiff on April 24, 2009 and June 8, 2010. *Id.* at 528-40. Dr. Mothersole observed that plaintiff scored in the mild range on the Beck-Depression Inventory-II, diagnosed plaintiff with a depressive order, not otherwise specified, and assigned a GAF score of 59.[4] *Id.* at 533, 536. *Id.* Dr. Ernest A. Bagner examined plaintiff on August 27, 2009. *Id.* at 248-51. Dr. Bagner observed that plaintiff's thought processes were tight, she had average intelligence, she could register one of three objects after five minutes, and while she could do serial threes, she was unable to do serial sevens. *Id.* at 249-50. Dr. Bagner diagnosed plaintiff with depressive disorder, not otherwise specified and assigned a GAF score of 70.[5] *Id.* at 250. Dr. Bagner opined that plaintiff would have zero to mild limitations maintaining concentration and attention and mild to moderate limitations handling normal work stresses and completing a normal work week. *Id.* at 250-51. Dr. Bagner further opined that plaintiff would be

---

[4] A GAF rating of 51-60 indicates "[m]oderate symptoms [] OR moderate difficulty in social, occupational, or school functioning []." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th Ed. 2000) ("DSM").

[5] A GAF rating of 61-70 indicates "[s]ome mild symptoms [] OR some difficulty in social, occupational, or school functioning [], but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

significantly better in less than six months with treatment. *Id.* at 250. Dr. P.M. Balson, a State Agency physician, agreed with Dr. Bagner. *See id.* at 257-78.

The ALJ erred. Dr. Mothersole opined moderate limitations, which indicated a severe impairment, while Dr. Bagner opined primarily mild limitations. Although Dr. Bagner's opinion may constitute substantial evidence, the ALJ must give specific and legitimate reasons as to why he gave less weight to Dr. Mothersole's opinion, which he failed to do. *See Lester*, 81 F.3d at 830-31.

Even assuming that the ALJ properly rejected Dr. Mothersole's opinion, arguably he still erred. If the evidence "indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities," the mental impairment can still be considered severe even when a claimant has no or mild limitations in the four foundation areas. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); *see also* 20 C.F.R. §§ 404.1521, 416.921. Here, Dr. Bagner opined that plaintiff may have moderate limitations handling normal work stresses and completing a normal workweek. AR at 251, 269. And the ability to complete a normal workweek is a subset of the third broad functional area. *See id.* at 268-70 (Mental Residual Functional Capacity Assessment form lists the ability to complete a normal workweek under the "Sustained Concentration and Persistence" category). Because Dr. Bagner opined that plaintiff would have moderate limitations in completing a normal workweek, the ALJ should have found the mental impairment to be severe.

Nevertheless, the ALJ's error was harmless. Dr. Mothersole opined that plaintiff presented as temporarily disabled and Dr. Bagner opined that plaintiff's mental condition would improve within six months with treatment. *Id.* at 250, 535. Thus, even if the ALJ correctly found that plaintiff had a severe mental impairment and established a prima facie case of disability, there is no evidence showing that plaintiff's mental impairment could be expected to last for a

continuous period of at least twelve months. 42. U.S.C. § 423(d)(1)(A); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ( "The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five.").

In sum, the ALJ erred at step two. Substantial evidence supported a determination that plaintiff had a severe right shoulder condition and depressive disorder, and the ALJ failed to give specific and legitimate reasons for rejecting the opinions of the treating and examining physicians that constituted this substantial evidence. The ALJ's failure to find that plaintiff had a severe mental impairment was harmless, but his failure to find plaintiff had a severe right should impairment was not.

**B. <u>The ALJ Failed to Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility</u>**

Plaintiff complains that the ALJ failed to make a proper credibility finding. P. Mem. at 8-10. Specifically, plaintiff argues that the reasons the ALJ provided for discounting her credibility were not clear and convincing. P. Mem. at 9-10. The court agrees.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[6] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis.

---

[6] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, although the ALJ does not expressly state so, the ALJ presumably found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. *See* AR at 20-21.

At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because: (1) pain medication controlled plaintiff's pain; (2) her daily activities were inconsistent with her alleged symptoms; (3) she received conservative treatment; and (4) she was able to sit through the hearing with no apparent discomfort. *Id.*

**1. <u>Controlled Symptoms</u>**

The ALJ's first ground for discounting plaintiff's credibility – that pain medication controls her pain – was not clear and convincing. It may be a clear and convincing reason to find a plaintiff less credible when his or her symptoms can be controlled by medication. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv);

*see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). But here, the facts do not support the ALJ's conclusion. Although the record reflects that medication *alleviated* plaintiff's pain (*see* AR 183, 252, 496), the ALJ incorrectly found that plaintiff stated medication *controlled* her pain. *See id.* at 20. Plaintiff never stated that. Indeed, the record shows that although the medication helped, plaintiff continued to experience pain. Because there is no evidence that the pain was controlled, this was not a clear and convincing reason to discount plaintiff's credibility. *See e.g.*, *Lankford v. Astrue*, No. 12-01517, 2013 WL 416221, at *5 (N.D. Cal. Jan. 31, 2013) (the ALJ's finding that a claimant's pain was controlled did not support his credibility assessment because the ALJ failed to recognize that the medication did not resolve the problem and claimant continued to complain of chronic pain).

**2. Daily Activities**

The ALJ cited plaintiff's daily activities as the second ground for finding her less credible. AR at 20. Specifically, the ALJ noted that plaintiff could clean the house without the use of her right hand, could lift pots and cleaning tools, and spent seven hours cleaning the house. *Id.* Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible. *Tommasetti*, 533 F.3d at 1039 ; *Bunnell*, 947 F.2d at 346-47. But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, plaintiff's activities were not inconsistent with her alleged symptoms and the ALJ misconstrued plaintiff's statements. The fact that plaintiff can lift a broom or pot is not inconsistent with her alleged shoulder pain. *See* AR at 172.

As for plaintiff's statement that it took her seven hours to clean the house, she did not specify whether it took her seven hours in a day, week, or month to clean the house. *Id.* Without greater context, the reason cannot be clear and convincing. Moreover, plaintiff's statements that she could not use her right hand to clean, that she did household chores, and did not do heavy housework were not inconsistent with her allegations that she could not do heavy lifting or reach overhead. *See id.* at 171, 249, 559. As such, plaintiff's daily activities were not a clear and convincing reason for finding her less credible.

**3. <u>Conservative Treatment</u>**

The ALJ's third ground for an adverse credibility finding was that plaintiff received only conservative treatment. *Id.* at 20-21; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). To support his conservative treatment finding, the ALJ also noted that plaintiff's treatment was initially infrequent and motivated by financial gain, and her condition was "permanent and stationary." AR at 20-21. This also was not a clear and convincing reason.

The ALJ correctly identified that plaintiff received conservative treatment, but he failed to acknowledge the recommendations for more aggressive treatment. Initially, plaintiff was treated with chiropractic care, acupuncture, and pain medication. *See, e.g., id.* at 439-51, 495-501. But when the pain continued, the physicians considered and employed more aggressive forms of treatment. Dr. Haronian recommended a subacromial injection or arthroscopic surgery, and Dr. Harris recommended an impingement test to determine whether plaintiff was a candidate for surgery. *Id.* at 367-68, 573-74. At the hearing, plaintiff testified that Dr. Haronian recommended surgery but she was awaiting authorization by the

insurance company.[7] *Id.* at 42; *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (noting that a failure to seek treatment may be the basis for an adverse credibility finding unless there is a good reason for the failure). Thus, plaintiff's treatment plan did not remain conservative.

The ALJ's characterization of plaintiff's treatment as "irregular and infrequent, at best, until [plaintiff] applied for benefits" was misleading *See* AR at 20. Plaintiff alleges a disability onset date of May 15, 2008. *Id*. at 157. Although plaintiff did not seek medical treatment until nearly three months after she first incurred the injury, this was not as significant amount of time as the ALJ implied. *See id.* at 495-501. Moreover, plaintiff explained that she did not earlier report her injuries because she was afraid of losing her job. *Id.* at 496.

The ALJ's citation to Dr. Harris to support his conservative treatment ground was similarly misleading. The ALJ stated that Dr. Harris opined that plaintiff's condition had not changed since 2008 and that she was permanent and stationary. *Id.* at 21. Dr. Harris, in fact, opined that plaintiff's condition had not changed since mid-2008, but he did not opine that it was "permanent and stationary".[8] *Id.* at 566-68. To the contrary, Dr. Harris merely noted Dr. Gofnung's assessment that plaintiff was "permanent and stationary. *See id.* at 565. Dr. Harris, on the other hand, opined that plaintiff could be a candidate for surgery depending on the results of an impingement test, which she had never received. *Id.* at 566-68. Dr. Harris clearly disagreed with that opinion as he suggested additional testing.

---

7 Indeed, just two days after the ALJ denied benefits, plaintiff underwent right shoulder arthroscopic surgery. AR at 570-72.

8 "Permanent and stationary" is a term used in the worker's compensation context. It simply means that a medical condition has reached the maximum medical improvement and is unlikely to change, and not that the person is not disabled. *See* Cal. Code Regs. tit. 8, § 10152 (2013).

**4. Personal Observations**

The ALJ's final ground for an adverse credibility hearing was based on his own observations. *Id.* at 21. The ALJ noted that plaintiff was able to sit through the hearing "in no apparent discomfort,"" respond to questions in an appropriate manner," and did not have any "noted distractions or overt pain behavior." *Id.* This again was not clear and convincing.

An ALJ's reliance upon personal observations at the hearing has been condemned as "sit and squirm" jurisprudence. *See Perminter v. Heckler*, 765 F.2d 870, 871 (9th Cir. 1985) (per curiam) ("Denial of benefits cannot be based on the ALJ's observation of [claimant], when [claimant's] statements to the contrary, as here, are supported by objective evidence."). Nonetheless, the Ninth Circuit has noted that "the 'inclusion of the ALJ's personal observations does not render the decision improper.'" *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (quoting *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999)). And an ALJ's observations that a plaintiff engaged in behavior at the hearing that was inconsistent with that plaintiff's complaints have been held adequate to justify an ALJ's discounting of plaintiff's credibility. *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989). Here, however, the ALJ did not observe behavior inconsistent with plaintiff's complaints. Plaintiff primarily complained of a right shoulder injury and limitations to reach and lift. *See, e.g.*, AR at 41, 252, 367, 559. It is unclear how an ability to sit through a fifty-minute hearing and respond appropriately was inconsistent with plaintiff's alleged symptoms.

Accordingly, the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount plaintiff's credibility.

**C. The ALJ Made an Improper RFC Determination**

Plaintiff argues that the ALJ's RFC determination was not based on substantial evidence. P. Mem. at 11-14. The court agrees.

The ALJ determined that plaintiff could perform light work with the following limitations: lift/carry ten pounds frequently and twenty pounds occasionally; stand/walk/sit for six hours out of an eight-hour day; occasional overhead reaching with the left arm; and decreased grip strength in the left arm. AR at 20. In reaching his RFC determination, the ALJ stated that he afforded great weight to the treating physicians, consultative examiners, and State Agency physicians. *Id.* at 21. The ALJ gave little weight to the opinions of two treating chiropractors, in part, because they were not considered acceptable medical source. *Id.* The ALJ also considered plaintiff's medical history. *Id.*

The court has already discussed the medical evidence *supra*. Based on the opinions, it is unclear to the court how the ALJ reached his RFC determination. Although he stated that he gave great weight to all of the treating and consulting physicians (*id.* at 21), the ALJ's RFC determination suggests otherwise. Indeed, it appears that his RFC determination adopted only a portion of Dr. Enriquez's opinion and was modified by the ALJ's own assessments.[9]

The medical evidence clearly showed that plaintiff had a right shoulder condition. All of the physicians noted decreased range of motion and tenderness. *See, e.g.*, *id.* at 254, 365-68, 562-63. Dr. Haronian and Dr. Harris both opined that plaintiff may require surgery. *Id.* at 365-67, 566. After plaintiff's initial examination in May 2008, Dr. Haronian opined that plaintiff avoid, among other things, repetitive twisting, overhead activities, and over shoulder activities. *Id.* at 381. Dr. Harris opined restrictions with respect to lifting, overhead use, pushing, and pulling. *Id.* at 566. As discussed *supra*, the ALJ expressly afforded great

---

[9] Curiously, the ALJ placed restrictions with regard to plaintiff's left arm. AR at 20. His basis for those restrictions was due to the effects of her mastectomy, including decreased grip strength. *Id.* at 21. But plaintiff only complained of pain on her left side at the hearing. *Id.* at 47. Her medical record did not reflect any symptoms involving her left shoulder, arm, or hand.

weight to their findings, yet his RFC determination did not reflect their opinions. It did not incorporate any of Dr. Haronian's or Dr. Harris's limitaitons. Because the ALJ clearly did not accept the opinions of Dr. Haronian and Dr. Harris, he must provide specific and legitimate reasons for rejecting them. *See Lester*, 80 F.3d at 830-31; *see also Reed v. Massanari*, 270 F.2d 838, 845 (9th Cir. 2001) (noting the agency generally gives more weight to specialists than to the opinion of a non-specialist).

The ALJ also rejected the opinion of Dr. Gofnung on the bases that he was not an acceptable medical source, his conclusions were not based on objective medical tests, and his opinion was beyond the scope of his expertise.[10] AR at 21. It is proper to give less weight to a chiropractor because he or she is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (chiropractors are not acceptable medical sources). But here, the reasons for giving no weight to Dr. Gofnung were not valid. *See Bain v. Astrue*, 319 Fed. Appx. 543, 546 (9th Cir. 2009) (ALJ had to provide a germane reason for discrediting a nurse's opinion). First, Dr. Gofnung conducted objective range of motion testing and his findings and opinions were, for the most part, consistent with those of Dr. Haronian and Dr. Harris. *See* SSR 06-03p (among the factors to consider when evaluating the opinion of "other sources" includes how consistent the opinion is with other evidence). Second, chiropractors may also treat shoulder pain. *See, e.g.*, *Garcia v. Astrue*, No. 08-3383, 2010 WL 1293376, at *1 (N.D. Cal. Mar. 31, 2010) (chiropractor treated claimant for back and shoulder pain).

---

[10] Similarly, the ALJ rejected the opinion of Dr. Reinherz on the bases that he was a chiropractor and his opined limitations were inconsistent with those of Dr. Chalison, an examining internist. AR at 21. The opinions of Dr. Reinherz and Dr. Chalison predated the alleged onset of injury and relate to an earlier back injury as opposed to the bases of plaintiff's application for DIB, a period of disability, and SSI. *See id.* at 157, 319-32, 405-10.

This leaves the fact that Dr. Gofnung was not an acceptable medical source as the sole remaining basis for rejecting his opinion. This reason, by itself, was not a legitimate basis for rejecting the opinion of a chiropractor. *See Sanfilippo v. Astrue*, 274 Fed. Appx. March 19, 2013551, 553 (9th Cir. 2008); SSR 06-03p (the agency will consider all relevant evidence).

Thus, the medical evidence did not support the ALJ's RFC determination. The ALJ's RFC determination was based on the improper rejection of opinions from both acceptable and not acceptable medical sources without legitimate or germane reasons.

**D. The ALJ Failed to Ask a Proper Hypothetical**

Plaintiff argues that the ALJ failed to ask a proper hypothetical. P. Mem. at 14-15. Specifically, plaintiff alleges that the VE failed to incorporate all of plaintiff's limitations in the hypothetical and to ask the VE if her testimony conflicted with the Dictionary of Occupation Titles ("DOT"). *Id.*

In his hypothetical, the ALJ incorporated all of the limitations set forth in his RFC determination. AR at 51. But, as discussed *supra*, the ALJ's hypothetical was based on an erroneous RFC determination. Therefore, the hypothetical was improper.

**V.**

**REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be

resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred at step two by failing to find that plaintiff's right shoulder injury and mental condition were severe, failing to provide clear and convincing reasons to discount plaintiff's credibility, failing to make a proper RFC determination, and posing an improper hypothetical to the VE. On remand, the ALJ shall: (1) reconsider the medical opinions, particularly those provided by Dr. Haronian and Dr. Harris, and either credit their opinions or provide specific and legitimate reasons for rejecting them; (2) reconsider plaintiff's credibility and, if discounting it, provide clear and convincing reasons for finding plaintiff less credible; (3) reconsider the opinion of Dr. Gofnung and either credit it or provide a germane reason for rejecting it; and (4) reevaluate the ALJ's step two and RFC determinations in light of the reconsidered opinions and evidence. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is or was capable of performing and for what period of time.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 25, 2013

SHERI PYM
United States Magistrate Judge